FILED

2026 Apr-29  PM 05:06
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION**

|  |  |  |
|---|---|---|
| **KURT MORTON,** | ] | |
| | ] | |
| **Plaintiff,** | ] | |
| | ] | |
| **v.** | ] | **Case No. 7:25-cv-1812-ACA** |
| | ] | |
| **THE PENNSYLVANIA STATE** | ] | |
| **UNIVERSITY BOARD OF** | ] | |
| **TRUSTEES, et al.,** | ] | |
| | ] | |
| **Defendants.** | ] | |

## <u>MEMORANDUM OPINION</u>

*Pro se* Plaintiff Abigail Morton[1] applied for a remote position with Pennsylvania State University ("Penn State") but was denied because of her residence in Alabama. She sues the Penn State Board of Trustees, Penn State President Neeli Bendapudi, and Penn State Vice President of Human Resources and Chief Human Resources Officer Jennifer Wilkes, asserting that they violated the Privileges and Immunities Clause of Article IV of the United States Constitution. (Doc. 1 ¶¶ 9–11, 22). Defendants move to dismiss the complaint for lack of personal

---

[1] When this litigation began, the complaint identified Plaintiff as named Kurt Morton. (Doc. 1 at 1). Plaintiff emailed the court a notice of legal name change to Abigal Morton. However, she did not file the notice on the docket, and thus, the Clerk has not changed the caption of the case to reflect her legal name. (*Cf.* doc. 26). For purposes of this opinion, the court will refer to Ms. Morton by her legal name.

jurisdiction under Federal Rule of Civil Procedure 12(b)(2) and failure to state a claim under Rule 12(b)(6). (Doc. 14). Because Defendants have not purposefully availed themselves of the forum, the court **WILL GRANT** the motion to dismiss for lack of personal jurisdiction and **WILL DISMISS** the complaint **WITHOUT PREJUDICE**.

## I.    BACKGROUND

A plaintiff defending against a pretrial Rule 12(b)(2) motion to dismiss "bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009); *see also AcryliCon USA, LLC v. Silikal GmbH*, 985 F.3d 1350, 1364 (11th Cir. 2021). But the defendant may submit evidence in support of its position. *See United Techs. Corp.*, 556 F.3d at 1274 (quotation marks omitted). In that situation, "the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction." *Id.* The court must accept as true any allegations in the complaint that are uncontroverted by the defendant's evidence. *Morris v. SSE, Inc.*, 843 F.2d 489, 492 (11th Cir. 1988). And where the plaintiff's and defendants' evidence conflicts, the court must make all reasonable inferences in favor of the plaintiff. *Id*. Defendants have submitted affidavits in support of their motion (docs. 16–18), and Ms. Morton rests on her complaint (*see* doc. 20 at 2–5). Accordingly,

the court's description of the facts draws from the uncontroverted allegations in the complaint and the uncontroverted evidence submitted by Defendants.

Penn State is a higher education institution with a principal place of business in Pennsylvania. (Doc. 16 ¶¶ 2–3). The Board of Trustees is the governing body of Penn State and holds its meetings in University Park, Pennsylvania. (*Id.* ¶¶ 4–5). The Board of Trustees "possesses ultimate authority to approve, adopt, and maintain University-wide policies, including . . . residency restriction[s]" on hiring. (Doc. 1 ¶ 9). Penn State's administrative policies are primarily developed and maintained out of the University Park campus. (Doc. 17 ¶ 5).

Ms. Bendapudi, as President of Penn State, serves as a non-voting member of the Board of Trustees and generally oversees the mission of the University. (*Id.* ¶ 1). This includes "approving and enforcing University-wide policies, including . . . residency restriction[s]" on hiring. (Doc. 1 ¶ 10). Ms. Wilkes "lead[s] [Penn State's human resources'] efforts in the areas of recruitment, compensation, labor and employee relations, benefits, and talent management." (Doc. 18 ¶ 1; *see also* doc. 1 ¶ 11).

Penn State's human resources website includes a "Notice to Out of State Applicants." (Doc. 1 ¶ 16; *see* doc. 1-4). The notice states that Penn State will not consider full-time or part-time remote work from twenty-three States, including Alabama. (Doc. 1-4 at 2). Ms. Morton, a resident of Alabama, applied for an open

3

"remote-eligible" position with Penn State. (Doc. 1 ¶¶ 8, 13). Ms. Morton quickly received an automated email declining to advance her in the hiring process. (*Id.* ¶ 15).

## II.   DISCUSSION

Defendants move to dismiss for lack of personal jurisdiction and failure to state a claim. (Docs. 14, 15). "[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction) and the parties (personal jurisdiction)." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430–31 (2007). Accordingly, the court addresses the jurisdictional argument first; and because this argument resolves the case, the court does not address the merits arguments.

Determining the existence of personal jurisdiction involves a two-step analysis: "the exercise of jurisdiction must (1) be appropriate under the state long-arm statute and (2) not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution." *United Techs. Corp.*, 556 F.3d at 1274. In Alabama, "the two inquiries merge, because Alabama's long-arm statute permits the exercise of personal jurisdiction to the fullest extent constitutionally permissible." *Sloss Indus. Corp. v. Eurisol*, 488 F.3d 922, 925 (11th Cir. 2007).

A court must have either general or specific jurisdiction over a defendant. *See Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021).

4

Ms. Morton concedes that the court does not have general jurisdiction over Defendants. (Doc. 20 at 2). So the court turns to specific jurisdiction.

Specific jurisdiction arises when a defendant has "minimum contacts" with the forum state. *ECB USA, Inc. v. Savencia Cheese USA, LLC*, 148 F.4th 1332, 1340–41 (11th Cir. 2025). Minimum contacts exist when (1) the claims "arise out of or relate to" the defendant's forum contacts; (2) the defendant "purposefully availed itself of the privilege of conducting activities" in the forum; and (3) personal jurisdiction does not offend "traditional notions of fair play and substantial justice." *Id.* (quotation marks omitted). Defendants maintain that Ms. Morton has not made a *prima facie* showing of any element. (Doc. 15 at 23–30). Because the court agrees that Ms. Morton has not shown that Defendants purposefully availed themselves of the forum, the court does not discuss the other two elements.

Defendants avail themselves of a forum when they "purposefully direct their activities toward forum residents or purposefully derive benefit from their in-forum activities." *Jekyll Island-State Park Auth. v. Polygroup Macau Ltd.*, 140 F.4th 1304, 1317 (11th Cir. 2025) (alteration accepted; quotation marks omitted). The "analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Walden v. Fiore*, 571 U.S. 277, 285 (2014). Exercise of jurisdiction is appropriate when a defendant has "reached out beyond their State and into another," including by entering a contract, deliberately exploiting

5

a market through sales, or physically entering the forum state. *Id.* (alteration accepted; quotation marks omitted). Additionally, a defendant must answer in a forum state's courts if the defendant "enjoys the benefits and protection of a forum's laws." *Jekyll Island-State Park Auth.*, 140 F.4th at 1317 (alteration accepted; quotation marks omitted).

Ms. Morton argues that Defendants purposefully availed themselves of the forum by creating a "written policy that singles out Alabama residents for adverse treatment." (Doc. 20 at 3). The only alleged contacts are that Defendants created, approved, and adopted the policy that excluded Alabama residents from consideration of remote positions, and then enforced that policy against Ms. Morton. (Doc. 1 ¶¶ 9–11, 16–17). But the creation, approval, and adoption of the policy occurred in Pennsylvania. (Doc. 16 ¶ 7; doc. 17 ¶ 5; doc. 18 ¶ 4). And even though the policy was enforced against Ms. Morton, "a plaintiff cannot be the only link between the defendant and the forum." *Walden*, 571 U.S. at 285; *see also id.* at 286 ("[A] defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction.").

Moreover, the specific facts of this case indicate that Defendants intentionally avoided availing themselves of "the benefits and protections of [the] forum's laws." *Jekyll Island-State Park Auth.*, 140 F.4th at 1317 (one alteration accepted). Defendants did not "reach out" beyond their State into this forum; quite the opposite,

6

they expressly refused to exploit a market, enter a contract, or otherwise avail themselves of the laws of Alabama by employing an Alabama resident. *See Walden*, 571 U.S. at 285. Moreover, Defendants' refusal to hire remote applicants from roughly half of the States in this country cannot mean that Defendants directed their activities towards residents in all those States and thus could reasonably anticipate litigation there. *See Jekyll Island-State Park Auth.*, 140 F.4th at 1316 ("[T]he Due Process Clause requires that the defendant's conduct and connection with the forum State be such that he should reasonably anticipate being haled into court there.") (quotation marks omitted).

Accordingly, the court **WILL GRANT** Defendants' motion to dismiss for lack of personal jurisdiction.

## III.    CONCLUSION

The court **WILL GRANT** Defendants' motion to dismiss under Rule 12(b)(2) and **WILL DISMISS** the complaint **WITHOUT PREJUDICE**.

**DONE** and **ORDERED** this April 29, 2026.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE